**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHELLE HARRISTON,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **PRESBYTERIAN SENIOR LIVING** | : | |
| **HOUSING MANAGEMENT** | : | |
| **CORPORATION,** | : | |
| **Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Michelle Harriston (hereinafter "Plaintiff"), by and through her attorney, Koller

Law, LLC, bring this civil matter against Presbyterian Senior Living Housing Management

Corporation (hereinafter "Defendant"), for violations of the Americans with Disabilities Act of

1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA"). In support

thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in Allentown, PA.

3. Upon information and belief, Defendant Presbyterian Senior Living Housing Management

    Corporation is a senior living facility with a location at 1 Kirkland Village Circle,

Bethlehem, PA 18017 and corporate headquarters located at 1 Trinity Drive, East, Suite 201, Dillsburg, PA 17019.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure

2

because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under the ADA and the PHRA.

13. Plaintiff timely filed a Complaint of Discrimination ("Complaint") with the Pennsylvania Human Relations Commission ("PHRC"), alleging disability discrimination and retaliation against Defendant.

14. The Complaint was assigned a Case Number 202503492 and was dual filed with the Equal Employment Opportunity Commission ("EEOC").

15. The EEOC assigned the Complaint Charge No. 17F-22660209.

16. The PHRC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Complaint and that Notice is dated February 25, 2026.

17. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

18. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.

19. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

3

**MATERIAL FACTS**

**PLAINTIFF'S EMPLOYMENT HISTORY**

20. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

21. On or about May 21, 2024, Defendant hired Plaintiff in the position of Independent Living Aide.

22. Plaintiff was well qualified for her position and performed well.

23. Plaintiff's initial assignment was a desk-based position in Defendant's wellness center.

24. In or around November 2024, Defendant expanded Plaintiff's duties to include home health shifts, which included dog-walking and other physically demanding tasks.

25. Plaintiff was well qualified for these job duties and performed well.

**PLAINTIFF'S DISABILITY**

26. However, due to these physically demanding duties, Plaintiff exacerbated the symptoms of her serious health condition of plantar fasciitis.

27. Plantar fasciitis is considered to be a disability under the Americans with Disabilities Act of 1990, as amended ("ADA") and the Pennsylvania Human Relations Act ("PHRA").

28. The major life activities affected by plantar fasciitis include, but are not limited to, walking, lifting and performing manual tasks.

**PLAINTIFF REQUESTED A REASONABLE ACCOMMODATION DUE TO HER DISABILITY**

29. In or around January 2025, Dr. Thomas M. Rocchio, Podiatrist, wrote Plaintiff a doctor's note confirming her disability and restricting her from dog-walking.

30. In or around January 2025, Plaintiff submitted Dr. Rocchio's note to Human Resources requesting a reasonable accommodation excluding dog-walking from her duties.

31. On or about February 15, 2025, Rebecca Rubin, then Human Resources Manager and current Regional Human Resources Director, granted Plaintiff's accommodation request through March 22, 2025.

### DEFENDANT RETALIATED AGAINST PLAINTIFF FOLLOWING HER REASONABLE ACCOMMODATION REQUEST

32. Human Resources gave Plaintiff a difficult time regarding the accommodation request despite accepting the medical documentation.

33. Defendant nitpicked Plaintiff's work performance, including falsely accusing her of failing to provide a resident with lunch.

### DEFENDANT DENIED PLAINTIFF'S RENEWED ACCOMMODATION REQUEST AND PLACED PLAINTIFF ON A LEAVE OF ABSENCE

34. On or about June 2, 2025, Dr. Rocchio issued a renewed doctor's note restricting increase in walking, including dog-walking and supporting continuation of the accommodation.

35. On or about June 2, 2025, Plaintiff resubmitted her accommodation request to Nicole Nelson, Human Resources Manager, who stated an additional fitness for duty form was required.

36. On or about June 3, 2025, Nelson instructed Plaintiff not to return to work, stating Defendant needed additional information regarding her accommodation

37. On or about June 4, 2025, Plaintiff submitted the fitness for duty form as requested.

38. On or about June 5, 2025, Nelson denied Plaintiff's accommodation request and instructed her not to report to work, again claiming additional information was required.

39. Defendant repeatedly demanded additional information without specifying what information was needed, despite Plaintiff's continued efforts to comply.

40. Due to Defendant's failure to accommodate Plaintiff, it placed Plaintiff on an unpaid leave of absence effective June 20, 2025.

**DEFENDANT CONTINUED TO REFUSE TO ACCOMMODATE PLAINTIFF, REPEATEDLY CITING AN ALLEGED NEED FOR ADDITIONAL INFORMATION**

41. On or about July 2, 2025, Defendant faxed a request for additional information to Corrie M. Brown, CRNP, demanding specific detail about the extent of Plaintiff's lifting and walking restrictions and the nature of any repetitive motion limitations.

42. Brown responded to Defendant's inquiry on or about July 2, 2025 confirming that Plaintiff cannot walk more than a block, needs to rest or move every 15 minutes, cannot lift more than 10 pounds, and has difficulty with bending, squatting, and wrist and hand motions for more than 15 minutes.

43. Brown further stated that accommodations allowing Plaintiff to move and rest intermittently would enable her to perform her job, and that the need for accommodation is lifelong.

44. On or about July 18, 2025, Defendant sent another fax to Brown requesting further clarification of Plaintiff's restrictions.

45. On or about August 14, 2025, Defendant received completed paperwork from Plaintiff's physician.

46. From on or about August 14, 2025 through on or about September 16, 2025, Defendant's benefits department reviewed the received documents.

47. On or about September 23, 2025, Defendant completed the accommodation procedure conversation with Plaintiff.

48. During the meeting on or about September 23, 2025, Defendant reviewed Brown's restrictions and stated that it was unable to identify a reasonable accommodation that would enable Plaintiff to perform the essential functions of her position.

49. Defendant did not consider reassignment to a vacant position and stated that no qualifying vacancies existed.

## DEFENDANT CONTINUED ITS REFUSAL TO ACCOMMODATE PLAINTIFF

50. In or around October 2025, Defendant posted openings for a Direct Care Worker position, claiming the job description was equivalent to Plaintiff's prior role.

51. The Direct Care Worker position required walking between multiple buildings and was beyond Plaintiff's medical restrictions.

52. Plaintiff informed Defendant she could not perform the new position due to her disability.

53. Shortly thereafter, Defendant concluded that the only available accommodation was to continued Plaintiff's unpaid leave of absence.

54. On November 16, 2025, Samantha Niagara, Corporate Leave of Absence Specialist, sent Plaintiff a letter directing her to return to work on November 22, 2025, and to submit a completed Fitness for Duty Certification at least 72 hours prior to that date.

55. On November 21, 2025, Dr. Kristin M. Ingraham, Rheumatologist, completed the Fitness for Duty Certification and requested the reasonable accommodations of no lifting over 10 lbs. and breaks following 30 minutes of walking.

56. Dr. Ingraham cleared Plaintiff to return to work on December 1, 2025 with the aforementioned medical restrictions.

## DEFENDANT CONSTRUCTIVELY DISCHARGED PLAINTIFF

57. However, on November 25, 2025, Sydney Turner, Human Resources Manager, requested additional information from Plaintiff's medical providers regarding the proposed position of Driver at Respondent.

58. Defendant prevented Plaintiff from returning to work on December 1, 2025.

59. It was clear to Plaintiff that Defendant had no intention of providing her with her requested reasonable accommodations which had remained similar since her initial request in January 2025 and from multiple medical providers.

60. Upon information and belief, there were available positions at Defendant, including, but not limited to, Plaintiff's original position, in which Defendant could have accommodated Plaintiff.

61. As a result of Defendant's conduct, Plaintiff was constructively discharged from Defendant.

62. Defendant discriminated against Plaintiff due to her disability, denied her a reasonable accommodation request and retaliated against her for requesting a reasonable accommodation in violation of the ADA and the PHRA.

63. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

### COUNT I – DISABILITY DISCRIMINATION
### AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

64. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

65. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a

record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

66. Plaintiff was qualified to perform the job.

67. Plaintiff was subject to an adverse employment action, including, but not limited to constructive discharge.

68. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

69. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

70. Plaintiff's disability motivated Defendant's decision to take adverse actions against Plaintiff.

71. The purported reason for Defendant's decision is pretextual.

72. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

73. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

74. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

75. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – DISABILITY DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

76. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

77. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

78. Plaintiff was qualified to perform the job.

79. Plaintiff was subject to an adverse employment action, including, but not limited to constructive discharge.

80. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

81. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

82. Plaintiff's disability motivated Defendant's decision to constructively discharge Plaintiff.

83. The purported reason for Defendant's decision is pretextual.

84. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

85. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

86. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

10

this Complaint, *infra*.

## COUNT III – RETALIATION
## AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED

87. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

88. Plaintiff engaged in activity protected by the ADA.

89. Plaintiff requested a reasonable accommodation due to her disability to Defendant.

90. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, constructive discharge.

91. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

92. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

93. Plaintiff engaged in activity protected by the PHRA.

94. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, constructive discharge.

95. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Michelle Harriston, requests that the Court grant her the following relief against Defendant:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Liquidated damages;

(d)     Emotional pain and suffering;

(e)     Reasonable attorneys' fees;

(f)     Recoverable costs;

(g)     Pre and post judgment interest;

(h)     An allowance to compensate for negative tax consequences;

(i)     A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the ADA and the PHRA.

(j)     Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

**KOLLER LAW, LLC**

Date: May 26, 2026

**By:** ***/s/David M. Koller***
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

13